UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| LOREN C. MARQUEZ, o/b/o A.N.M., | ) | No. ED CV 08-00144-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | (Social Security Case) |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge.  The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner.  The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1.   Whether the Administrative Law Judge ("ALJ") violated

1            Plaintiff's due process rights;

2    2.   Whether any of Plaintiff's impairments or combination of

3        impairments meet or medically equal any Listing;

4    3.   Whether the ALJ's determination that Plaintiff's disability

5        ceased in March 2004 is supported by substantial evidence;

6    4.   Whether the ALJ properly relied on Dr. Meyers' and Dr.

7        Taylor's reports;

8    5.   Whether the ALJ improperly rejected Dr. Shuhibar's and Dr.

9        Heindselman's reports;

10   6.   Whether the ALJ properly assessed the credibility of

11       Plaintiff and of Plaintiff's mother; and

12   7.   Whether the ALJ failed to develop the record.

13

14   This Memorandum Opinion will constitute the Court's findings of

15 fact and conclusions of law. After reviewing the matter, the Court

16 concludes that for the reasons set forth, the decision of the

17 Commissioner must be reversed, and the matter remanded for new hearing

18 before a reassigned ALJ.

19   The Court will address only those issues necessary to a

20 determination of this case.

21

22 **INTRODUCTION**

23 **A.   Background**.

24   Plaintiff[1] was born on September 4, 2001. (AR 286.) On October

25 31, 2001, she was found to be disabled as of her date of birth. On

26 March 1, 2004, a letter from the Social Security Administration

27

---

28   [1]   The minor child, A.N.M., will be referred to as Plaintiff.

2

entitled "Notice of Disability Cessation" was mailed to Plaintiff's mother, indicating that, "The medical evidence shows that [Plaintiff's] health has improved and she no longer meets the disability requirements in 03-04." The evidence cited was described as a Loma Linda University Children's Hospital report received on October 26, 2001, a Regional Ctr/San Bernardino report dated January 20, 2004, and a Loma Linda pediatric medical report received December 26, 2003. (AR 55.)[2]

An administrative hearing occurred on June 2, 2005 to consider the cessation of benefits. (AR 41-45.) The evidence considered at that hearing was a psychological examination report ("CE") of C. Taylor, dated February 8, 2005; Loma Linda Children's Hospital records for the period June 8, 2004 through October 19, 2004; and Inland Regional Center records for the period February 13, 2003 through November 17, 2003. (AR 42.)

The AR also contains a "Consultation Request" dated April 6, 2005. Regarding the decision to cease payment of benefits in March 2004, this document indicates the following reason: "Ceased due to failure to keep CE [Consultative Examination]." (AR 139.) As of June 8, 2004, the same document indicates that Plaintiff had not shown up twice for a psychological CE, and that, "We have insufficient

---

[2]     None of these medical records are included in the AR. Interestingly, the only medical evidence relied upon by the ALJ in making his decision significantly post-dated the period of March 2004. For example, the only Loma Linda records contained in the AR cover the period from June 8, 2004 to October 19, 2004. (AR 130-138.) Despite this lack of medical evidence, the ALJ made determinations in his decision as to the state of Plaintiff's health as of March 1, 2004. The lack of any evidence whatsoever in the record concerning Plaintiff's health as of March 2004 will be discussed later in this Decision, and forms a substantial part of the basis for the Court's determination of error.

evidence." (Id.)   On January 31, 2005, Dr. Meyer, the State Agency
pediatrician, indicated that, "As there is no 3377, we can't really
tell what the mom says about her child's developmental attainments.
Would it be possible to get her to respond over the phone? ...   Also,
there is a reference to Head Start in the TP visit of 10/04.   Can we
get any records from them?" (AR 139-140.)[3]

_____

     [3]     It appears that a "3377" refers to Form SSA-3377-BK, which
is contained in the AR, and is described as "Function Report - Child
age 3 to 6th Birthday." (AR 122.)   The date of completion of this form
is February 1, 2005.   The report was taken over the phone, and the
unidentified agency representative who took the report indicated,
"Seems that we have insufficient evidence vs. medical improvement.
Please reassess.   Thanks." (AR 140.)   On that same date, Dr. Meyer
apparently reviewed the 3377 form, and stated the following:
          "Based on the 3377 filled out in a phone call, this
          child does not appear to be significantly developmentally
          delayed as she has normal communication skills, is able to
          put on her shoes (albeit wrong feet), and other limitations
          are not that unusual for her age which is just barely 3.   I
          feel that this level of development would result in a
          cessation, but because we do not have the objective/
          quantitative evidence, I think it is more appropriate to say
          'Insufficient Evidence.'   Claimant has missed 4 CE's.   DP
          given per DEA."
(AR 140.)
     Dr. Meyer apparently first filled out a "Childhood Disability
Evaluation Form" on February 1, 2005, but later crossed out that date,
and inserted the date of April 7, 2005. (AR 141-146.)   The original
box checked off was "Other," with a handwritten notation,
"Insufficient Evidence."   This was later crossed out, and a box was
checked off indicating, "Impairment or combination of impairments is
severe, but does not meet, medically equal, or functionally equal the
Listings." (AR 141.)
     Looking to the period between February 1, 2005 and April 7, 2005,
there is a notation in the Consultation Request that Dr. Meyer was
informed that it had been suggested that Plaintiff's mother be given
another chance to keep the CE appointment, and that the appointment
was in fact kept. (AR 140.)   This apparently references the February
8, 2005 psychological CE of Dr. Taylor (AR 147-151), which is again
referenced in the consultation request. (AR 140.)   It would appear,
therefore, that Dr. Meyer reviewed Dr. Taylor's report, and then
changed her own report of February 1, 2005, in which she had indicated
                                                  (continued...)

B. **Applicable Law**.

The evaluation of continuing disability is subject to the three-step evaluation process set forth in 20 C.F.R. §416.994(a)(B); see SSR 05-03p.  First, there is a determination made as to whether medical improvement has been demonstrated in the impairments which formed the basis for the disability determination at the CPD.  If there is no medical improvement, it would be determined that the childhood disability is continuing.  If there is medical improvement, then at step two, a determination must be made as to whether the impairment{s} meets or medically equals the severity of the listed impairment at the time of the CPD.  If this is found not to be true, then at step three, an examination of the issue of whether the child remains disabled must be made, considering the child's current impairments.  Here, the analysis more resembles the typical adult disability step analysis, and involves a determination of whether the impairment or combination of impairments is severe; if severe, whether the impairment meets or medically equals a listed impairment; and if not, whether the impairment or combination of impairments is functionally equivalent to a Listing. (See 20 C.F.R. §§924(c); 416.994a(b)(3)(i); 416.924(e); 416.925; 416.926; 416.926a(b)(3)(ii).)

//

//

//

I

---

[3](...continued)
there was insufficient evidence to form a conclusion as to Plaintiff's disability.  The inescapable conclusion is that Dr. Meyers formed her opinion solely on the basis of Dr. Taylor's CE.

5

## THE ABSENCE OF COUNSEL AT THE ADMINISTRATIVE HEARING

## DID NOT CONSTITUTE A DUE PROCESS VIOLATION

At the January 23, 2007 hearing before the ALJ, Plaintiff appeared with her mother, but without counsel. Plaintiff's first contention here is that the absence of counsel, and especially the ALJ's failure to advise Plaintiff's mother of her right to counsel, constituted a due process violation. Both the applicable law on this subject and the state of the record do not support this contention.

### A.   Applicable Law.

Social Security Regulations ("SSR") establish that a claimant has a right to appoint a representative. That representative need not be an attorney. (See 20 C.F.R. §§404.1700, 404.1703, 404.1705.) The Commissioner's obligation to notify a claimant of her right to appoint a representative is also set forth in the regulations. 20 C.F.R. §404.1706 specifically provides that if the Commissioner makes a determination subject to the administrative review process, and does not grant all benefits or other relief requested, or adversely affects any entitlement to benefits that has been previously established, the notice of such decision will include information about options for obtaining an attorney to represent the claimant in dealings with the Commissioner. (Id.) The Commissioner will recognize someone as a representative for a claimant if the claimant signs a written notice appointing the individual, and the representative signs the notice agreeing to be the representative, if the person is not an attorney. The notice must then be filed at a Social Security office, or with an ALJ if a hearing has been requested. (20 C.F.R. §404.1707.)

The authority of a representative includes obtaining information

1  about the claim; submitting evidence; making statements about facts
2  and law; and making any request or giving notice about the
3  proceedings. (20 C.F.R. §404.1710.)  In turn, the Commissioner will
4  send the representative a notice and copy of any administrative
5  action, determination or decision; and, requests for information or
6  evidence. (20 C.F.R. §404.1715.)

7      There is no constitutional guarantee of the right to counsel in
8  Social Security cases.  The right to counsel is provided by statute.
9  (See 42 U.S.C. §406.)(See also Key v. Heckler, 754 F.2d 1545, 1551 (9th
10  Cir. 1985)("Lack of counsel does not affect the validity of the
11  hearing unless the plaintiff can demonstrate prejudice or unfairness
12  in the administrative proceedings." )(citing Vidal v. Harris, 637 F.2d
13  710, at 713 (9th Cir. 1981.)

14

15  **B.   Analysis**.

16      The SSA provided ample notice of Plaintiff's right to
17  representation.   As the Commissioner notes, the SSA notified
18  Plaintiff's mother five times prior to the January 23, 2007 hearing
19  that she had a right to representation. (See AR at 29, 32, 34-35, 39,
20  57.)  Further, in response to the request sent by Plaintiff's mother
21  for a hearing, the SSA both explained this right in detail and in
22  addition provided the address and telephone numbers of various
23  attorney referral services, as well as contact information for pro
24  bono representation.   The notice of hearing clearly states that
25  representation is an available option.

26      For these reasons, the Court finds no due process violation.

27

28                              **II**

7

## THE ALJ'S FINDING THAT PLAINTIFF'S DISABILITY CEASED

## IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

As a preliminary matter, as the Court has already noted, there is no evidence whatsoever in the record to support a finding that Plaintiff's disability ended as of March 1, 2004, the date that the SSA determined to cease payment of benefits.  As the Court's summary of the record indicates, it is apparent that the decision to terminate disability benefits was based not on medical evidence, but on an apparent failure of Plaintiff to keep certain psychological examination appointments.  There is simply no evidence whatsoever in the record regarding Plaintiff's medical condition as of March 1, 2004.  Consequently, there is no substantial evidence, and in fact no evidence whatsoever, to support the ALJ's conclusion as to Plaintiff's condition as of March 1, 2004.

The more complicated question is whether the ALJ's apparent determination that Plaintiff is not currently disabled is supported by substantial evidence.  For the reasons to be discussed, the Court again concludes that this determination is not supported by substantial evidence.

There are three different examining sources whose findings are contained in this record.  The first is that of clinical psychologist Clifford Taylor, Ph.D. (AR 147-151.)  The next is an examination performed by Dr. Shuhibar, M.D., of the San Bernardino County Department of Behavioral Health Child/Adolescent Evaluation Section. (AR 152-156.)  Following that is the third evaluation, dated January 19, 2007, again performed by the San Bernardino County Department of Behavioral Health, by Tracy Heindselman, Ph.D., a clinical therapist. (AR 157.)  These reports are addressed by the ALJ. (see AR at 21, 23-

24.)   Ultimately, the ALJ adopted the findings of Dr. Taylor (erroneously referred to by the ALJ as a medical doctor, at AR 23), who opined that Plaintiff had largely mild impairments in six domains of functioning utilized to assess whether a child meets or equals a listed impairment. (See 20 C.F.R. §926a(b).)[4]

The ALJ determined to accord the most weight to the opinion of the State Agency physician, Dr. Meyer, who of course never examined Plaintiff. (AR 23.)   In support of this, the ALJ indicated Dr. Meyers' opinion is consistent with the record as a whole and with the ALJ's own assessment of the overall evidence. (Id.)   Indeed, the problem with this reasoning is that Dr. Taylor's report was the only medical report that Dr. Meyer had seen.   Dr. Meyer never saw Dr. Shuhibar's report, nor that of Dr. Heindselman.   These reports were generated significantly after Dr. Meyer's report was completed.   Further, Dr. Meyer's conclusions are not, as the ALJ assessed, consistent with the record as a whole.   They are consistent with Dr. Taylor's opinions. They are also apparently consistent with the ALJ's own analytical conclusions.   As the ALJ noted,

> "In addition, I did not notice patent evidence of autistic disorder at the hearing.  [Plaintiff] appeared to be a friendly and relatively unimpaired child at the hearing.   Therefore I adopt Dr. Meyer's opinion in this decision."

---

[4]   While the ALJ found that Plaintiff has marked limitations in attending and completing tasks (AR 24), as of March 1, 2004, at the same time the ALJ found that as of the same date, Plaintiff has less than marked limitations in this functional area. (See AR at 17.) There is no explanation in the decision for this obvious contradiction.

1  (AR 24.)

2

3      The above statement, in and of itself, constitutes sufficient

4  reason to reverse the ALJ's decision.   The ALJ is not a medical

5  expert, and simply has no business attempting to perform a diagnosis

6  of whether the child is or is not autistic or otherwise impaired based

7  upon a discussion between himself and the Plaintiff at the hearing,

8  which fills a mere four pages of transcript.[5]

9      Moreover, the ALJ's rejection of Dr. Shuhibar's opinion is not

10  supported by the reasons set forth in the decision.   First he says

11  that, "The degree of the [Plaintiff's] impairments appeared to be

12  overstated by Dr. Shuhibar."   The Court has no idea what is meant by

13  that statement.   Next, the ALJ complains that there were no treatment

14  notes to substantiate a diagnosis of autistic disorder.   Thus, it is

15  the ALJ's apparent view that while Dr. Taylor can do a thorough

16  diagnosis of Plaintiff in one examination, Dr. Shuhibar, a medical

17  doctor, cannot diagnose autism through her own examination.   Further,

18  and again, the ALJ inserts his own medical assessments into the basis

19  for his decision, stating, "The [Plaintiff's] presentation at the

20  hearing was relatively normal and age appropriate and was nowhere

21  consistent with a Global Assessment of Functioning of 30, as Dr.

22  Shuhibar opined. (AR 24.)

23      All in all, not only is the decision unsupported by substantial

24  evidence, but also reflects an improper assertion of medical expertise

25  by the ALJ, which is clearly inappropriate.   The apparent proclivity

26

27          [5]    In any event, some of Plaintiff's answers to the ALJ's
   questions appear to be both internally contradictory, and at times
28  non-responsive.

1  of the ALJ to engage in medical diagnosis gives the Court substantial

2  concern, and therefore, the Court will take the rare step of ordering

3  that on remand, this matter be assigned to a new ALJ for hearing.

4      Finally, the Court will briefly address the final issues, which

5  concern the assessment of Plaintiff's and her mother's credibility,

6  and the ALJ's duty to develop the record.  These are interconnected

7  issues.  With regard to credibility, that matter will be redetermined

8  at the new hearing mandated by this decision.  But the Court does note

9  that Plaintiff's mother has raised substantial concerns and issues

10  regarding Plaintiff's behavior which have, thus far, been either

11  cursorily addressed, or disregarded.  These issues concern the child's

12  apparent inability to interact appropriately with other children;

13  whether the child can perform her own personal hygiene; assertions

14  that the child had been removed from some school environments because

15  of behavioral problems; that the child has cut herself with a razor;

16  and, finally, that she has exhibited serious aggressive behavior with

17  other children. It would seem apparent that if school records can be

18  obtained, they should be examined.  Moreover, it would seem

19  appropriate that a consultative examination by a qualified physician

20  or psychologist with expertise in autism should be conducted in order

21  to make an appropriate determination of whether Plaintiff continues to

22  be disabled.

23  //

24  //

25  //

26  //

27  //

28      For the foregoing reasons, this matter is remanded for further

1 | hearing and development of the record in conformity with this

2 | decision.

3 |     **IT IS SO ORDERED.**

4 |

5 | DATED: <u>April 20, 2009</u>                    <u>            /s/            </u>
                                     VICTOR B. KENTON
6 |                                  UNITED STATES MAGISTRATE JUDGE